UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 14-10-GFVT |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| JOHN G. WESTINE, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Government argues that evidence of John G. Westine's prior bad acts should be admissible at trial. Westine objects on the grounds that evidence of his prior bad acts is irrelevant and prejudicial. [R. 112; R. 151.] Having heard argument from both parties on the subject, reviewed the briefing and the applicable case law, the issue is now ripe for resolution.

I

On October 9, 2014, Westine was charged by superseding indictment with twenty-nine counts of mail fraud, a single count of conspiracy to commit money laundering, and one count of selling unregistered securities. [R. 51.] A couple weeks later, the Government filed notice of its intent to present evidence of prior bad acts at trial. [R. 79.] Westine objects, suggesting that these acts have "no relationship to the offenses charged" and that their introduction would be unfairly prejudicial. [R. 112.] He asks that if the prior judgments are allowed into evidence that he should be able to "attack these judgments as 'void ab initio' or its failure to state or charge a known crime." [R. 151.] First, the Government argues that Westine, who they characterize as a

"convicted oil investment fraudster," had a duty to make his investors privy to this information when he was asking them to invest in an oil operation with him. [R. 154 at 4-6.] They argue that evidence of his past history and convictions should be admissible as intrinsic to the offense or background evidence. *Id*. Second, they argue that details of his 1991 conviction are admissible for non-propensity purposes under Federal Rule of Evidence 404(b). [*Id.* at 6-11.] Finally, if Westine decides to testify at trial, the Government seeks to use these convictions for impeachment under FRE 608 and 609. [R. 79.]

## II

### A

In some limited circumstances the Government may introduce evidence of past conduct if the conduct is sufficiently tied to the presently charged offense. As has been explained by the Sixth Circuit:

> [p]roper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*United States v. Marrero*, 651 F.3d 453, 471 (6th Cir. 2011) (quoting *United States v. Hardy,* 228 F.3d 745, 748 (6th Cir. 2000)). When background or *res gestae* evidence is presented in this way, it is not subject to the strictures of Rule 404(b). *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013) (citing *United States v. Clay,* 667 F.3d 689, 697 (6th Cir. 2012)).

The Government argues that evidence of Westine's 1992 oil scheme conviction, 1990 tax fraud, and his 1985 injunction relating to his operation of an oil scheme are all admissible as background evidence because they are "intrinsic to," and "directly probative of the allegations

contained in the Superseding Indictment." [R. 154 at 3-4.] It is to this analysis which the Court now turns.

First, the Court must consider whether the evidence the Government seeks to introduce has a sufficient "causal, temporal or spatial connection with the charged offense." *Marrero*, 651 F.3d at 471(quoting *Hardy,* 228 F.3d at 748). While each of the convictions took place far before the crime currently being prosecuted, the Government argues that Westine's past convictions and injunction are sufficiently connected because they are "intrinsic to" and "directly probative" of the present allegations. [R. 154 at 4.] In Counts 1-29 of the Superseding Indictment, Westine is charged with mail fraud. [R. 51-1.] Therein it is alleged that Westine failed to disclose "material facts" to investors, one being that Westine had a "criminal record involving fraudulent conduct, including a conviction in 1991 for conducting essentially the same oil production scam." [*Id*. at 7.] To prove mail fraud, the Government must show that "the scheme included a material misrepresentation or concealment of a material fact." Sixth Circuit Pattern Jury Instructions, *10.01 Mail Fraud (18 U.S.C. § 1341).* In Count 31, where it is charged that Westine sold unregistered securities, the Government alleges that Westine did "make untrue statements of material facts and omit to state material facts necessary in order to make the statements made…not misleading." [R. 51-1 at 13.] As articulated by the Government, information is "material" when "there is a substantial likelihood [that] a reasonable investor would have considered it important in deciding whether to buy." *United States v. Sayre*, 434 F. App'x 622, 623 (9th Cir. 2011) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 231-232 (1988)). In the Government's eyes, investors would have considered Westine's criminal history as important when deciding whether or not to invest with him. And so, they argue that Westine's past

3

unlawful conduct is admissible to show that he made material misrepresentations when promoting the oil scheme

The Eleventh Circuit faced a substantially similar question in *United States v. Rafferty*, 296 F. App'x 788 (11th Cir. 2008). In that case, the defendant was charged with securities fraud and the Government was tasked with proving that he "omit[ed] material facts in communications with investors." *Id*. at 794. The Eleventh Circuit affirmed the district court's ruling that evidence of the defendant's prior securities fraud convictions, a permanent injunction entered against the defendant, and two civil fraud judgments were correctly admitted. *Id*. The Court found no abuse of discretion when the district court adopted the Government's argument that the above noted evidence was "part of the offense charged and thus intrinsic, as witnessed by the reference to the specific material omissions." *Id.* at 795.

The Government also argues that evidence of Westine's prior bad acts are "inextricably intertwined" to the current charges because they provide integral details, necessary to understanding the narrative of the crime. [R. 154 at 5.] Specifically, they note that promotional materials held the principals out as "experienced and proven oil producers who had been in the business for 30 or 40 years," despite the fact that Westine had just completed serving a 22-year prison sentence before perpetrating the presently charged fraud. [R. 51-1 at 7; R. 154 at 5.] As the Government puts it, Westine's prison term proves that his statements were false, serving as both a "prelude to" and "complet[ing] the story of the charged offense." [R. 154 at 4 (quoting *Adams*, 722 F.3d at 810).]

To obtain a conviction, the Government must prove that Westine made material misrepresentations or concealed material facts. Whether or not Westine is, as was represented to his investors, an "experienced and proven" oil producer or, as the Government argues, a

4

"fraudster" is directly probative of whether such misrepresentations were made. Consequently, references to the above convictions are admissible without considering Rule 404(b) because proof on these issues is intrinsic to or inextricably intertwined with evidence of the charged offenses. Furthermore, because Westine was serving a prison sentence at the same time that he claimed to have been gaining experience in the business of oil production, that fact is "inextricably intertwined with the charged offense" and it is "necessary to complete the story of the charged offense." *United States v. Joseph*, 270 F. App'x 399, 405 (6th Cir. 2008) (quoting *Hardy,* 228 F.3d at 748); *see also United States v. Martinez*, 430 F.3d 317, 335 (6th Cir. 2005) (testimony that Defendant was in prison for drug trafficking was "inextricably intertwined with the charged offense" and admissible without application of Rule 404(b) to refute an implication that the Defendant was away from home for innocent reasons.)

**B**

Generally, the Government may not introduce evidence of prior bad acts at trial because of the concern that the introduction of such evidence may lead to an improper guilty verdict. Rule 404(b)(1) responds to this concern: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Like all rules, however, Rule 404(b) is not without exception. Most notably, evidence of a crime, wrong, or other act "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The Sixth Circuit has articulated a three-step analysis for determining whether prior bad act evidence is admissible as permissible "other use" evidence. "First, the district court must make a preliminary determination regarding whether there is sufficient evidence that the 'other

acts' took place." *United States v. Bell*, 516 F.3d 432, 441 (6th Cir. 2008) (quoting *United States v. Lattner*, 385 F.3d 947, 955 (6th Cir. 2004)). The second step is for a court to "determine whether those 'other acts' are admissible for a proper purpose under Rule 404(b)." *Id*. Third and "[f]inally, the district court must determine whether the 'other acts' evidence is more prejudicial than probative." *Id*.

The Government seeks to introduce the details of Westine's 1992 Fraud Conviction. [R. 154 at 6-10.] In deciding whether such evidence is admissible, the Court must first find that the prior bad act did actually occur. *Bell*, 516 F.3d at 441. This burden is met "if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Id*. (citing *Huddleston v. United States*, 485 U.S. 681, 689 (1988)). In the present case there is no question that a jury could reasonably conclude that the bad act occurred because a jury did, in fact, so conclude. *See United States v. Westine*, CR-1-91-127-01 (S.D. Ohio 1991).[1]

"The second step of the district court's Rule 404(b) analysis is to determine whether the other acts evidence is admissible for a legitimate purpose." *Bell*, 516 F.3d at 441. "Legitimacy" requires a tri-partite finding of admissibility, materiality, and probativeness. *Id*. at 441-42. Further, a "legitimate purpose" is something other than character propensity evidence, meaning that there must be some use for it other than supporting the inference that because Westine may have done something similar in the past that he must also be guilty of the present charge. *See id*. ("[T]he trial court must decide whether that evidence is probative of a material issue other than character").

Again, with regard to admissibility, Rule 404(b)(2) lists a number of permitted uses of

---

[1] As has been addressed by past Order of this Court, Westine challenges the basis for his 1992 conviction. [*See* R. 157 at 4-5.] He does not, however, challenge the fact that he was so convicted.

6

"other acts" evidence: "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). This list is not exhaustive; Rule 404(b)(2) makes this clear by adding the words "such as" prior to the list to make it plain that it is only identifying common uses, not listing each and every acceptable one. When read together: "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Thus, the list is nothing more than a number of common uses of "other acts" evidence, not a mandate to pigeonhole an attempted use into one of the enumerated uses. *See United States v. Bakke*, 942 F.2d 977, 981 (6th Cir. 1991) ("The list contained in Rule 404(b) is not exhaustive; evidence may be admitted for additional similar purposes"). This makes sense as Rule 404's purpose is to prohibit the use of "other acts" character evidence to prove that one acted in conformity therewith, not to require that the evidence be used in one of many precise ways. *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985) ("This is actually a rule of inclusion rather than exclusion, since only one use is forbidden and several permissible uses of such evidence are identified"); *see* Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.") The Government contends that details of Westine's 1992 conviction are admissible because they are probative of Westine's identity, intent, knowledge, demonstrate an absence of mistake or lack of accident, his plan and preparation. [R. 154 at 6-11.]

Evidence of Westine's past conviction is probative of both his present **intent** to defraud investors and of his **knowledge** of the scheme. As the Sixth Circuit has explained, "when a defendant is charged with a specific intent crime…404(b) evidence is admissible to prove intent,

7

subject to the probative/prejudicial balancing." *Lattner*, 385 F.3d at 957 (citing *United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994) (when the Government bears "the affirmative duty to prove that the underlying prohibited act was done with a specific criminal intent, other acts evidence may be introduced under Rule 404(b)."). Amongst other things, Westine is charged with mail fraud which requires the Government to prove that the "defendant had the intent to defraud" which is further defined as "act[ing] with an intent to deceive or cheat for the purpose of either causing a financial loss to another or bringing about a financial gain to oneself." Sixth Circuit Pattern Jury Instructions, *10.01 Mail Fraud (18 U.S.C. § 1341)*. Mail fraud is a specific intent crime. *United States v. Stephens-Miller*, 582 F. App'x 626, 636 (6th Cir. 2014) (citing *United States v. Frost,* 125 F.3d 346, 354 (6th Cir. 1997)).

Westine's past conviction is also probative of **identity**— an issue that the Government expects to be central to the trial. [*See* R. 154 at FN1; R. 171 at 52, 70.] When the defendant's behavior is so "unusual or distinctive as to be like a signature," then prior bad acts evidence may be admissible. *United States v. Woods*, 613 F.2d 629, 635 (6th Cir. 1980). The Government contends that Westine used the same aliases and nearly identical techniques when perpetrating his 1992 fraud and that these aliases and techniques are sufficiently distinctive to qualify as "signature" elements. Such evidence is material for purposes of trial because one of Westine's anticipated defenses is that his co-defendants, not him, were responsible for the fraud. [*See* R. 171 at 52, 70.] This is significant because his co-defendants were not a part of the 1992 fraud. [R. 154 at 7.] Such signature evidence is probative of whether Westine, as opposed to solely his co-defendants, perpetrated the fraud.

"[F]or other acts evidence to be admissible for the purpose of showing absence of mistake or accident, the defendant must assert a defense based on some type of mistake or

accident." *Bell*, 516 F.3d at 442. One such defense is a "claim[] of innocent presence or association…[which] routinely open[s] the door to 404(b) evidence." *Lattner*, 385 F.3d at 957. Because it is anticipated that Westine will advance such a defense [*see* R. 154 at FN1; R. 171 at 52, 70] evidence from his prior fraud will also admissible to show **absence of mistake** and **lack of accident**.

Finally, the Government argues that Westine's past oil investment fraud is probative of his **planning** and **preparation** of the presently charged crime. [R. 154 at 9.] They assert the past conviction demonstrates how he used "personal aliases and the names of co-conspirators when communicating with victims, virtual offices, and oil industry participants." [*Id*.] Furthermore, the Government argues that Westine changed or adapted his tactics based on what he learned from his last conviction so as to better evade prosecution his second time around. [*Id*.] It is not clear to the Court how either the similarity of the two crimes or Westine's evolution makes the two crimes part of the same plan or evidence of his preparation.

A prior bad act is admissible as evidence of plan or preparation when it can be shown that the two instances are a part of the same scheme or plot. Westine's prior fraud conviction, which took place over 20 years ago, is notably similar, but there is no evidence that when Westine committed the 1992 fraud that he had "hatched a plan or scheme to commit…the charged offense." *Joseph*, 270 F. App'x at 405. Without evidence that the two crimes were related in Westine's mind or that they were actually part of one complex design or plot, the Government cannot introduce prior bad act evidence for this purpose.

The second prong of the subtest requires a finding that the prior bad act evidence is "**material**" or "**in issue.**" *Bell*, 516 F.3d at 442. Stated another way, "the government's purpose in introducing the evidence must be to prove a fact that the defendant has placed, or conceivably

9

will place, in issue, or a fact that the statutory elements obligate the government to prove." *United States v. Merriweather*, 78 F.3d 1070, 1076 (6th Cir. 1996). As has been explained, Westine's intent is at issue because he is charged with specific intent crimes and he has plead not guilty. Westine places his identity and also issues surrounding whether his actions were by accident or mistake at issue because he suggests that his co-defendants were actually at fault and that he was nothing more than an innocent associate.

The final prong of this sub-test, requires that the evidence must be "**probative** with regard to the purpose for which it is offered." *Bell*, 516 F.3d at 442. "To determine if evidence of other acts is probative of intent, we look to whether the evidence relates to conduct that is 'substantially similar and reasonably near in time' to the specific intent offense at issue." *Id*. at 443 (citations omitted). There is, however, "no absolute maximum number of years that may separate a prior act and the offense charged." *Id*. (quoting *United States v. Ismail*, 756 F.2d 1253, 1260 (6th Cir. 1985)). In the past, the Sixth Circuit has determined that eight-year-old convictions are not too remote for purposes of 404(b). See *United States v. Clark*, 2008 WL 821898, at *4 (E.D. Ky. Mar. 26, 2008) (citing *United States v. Matthews,* 440 F.3d 818 (6th Cir. 2006); *United States v. Persinger,* 83 F. App'x. 55, 59 (6th Cir. 2003)). While many years have passed since Westine's last conviction, the Court notes that Westine was incarcerated for nearly the entire period between his past conviction and committing his most recent fraud. Furthermore, as articulated by the Government, both crimes utilized nearly identical *modus operandi*, which is a reason to determine the former is probative of the latter. *See Bell*, 516 F.3d at 443-444. Westine was past convicted of fraudulently inducing investors to invest in oil and gas fields. In that past scheme, Westine used telephone sales presentations to recruit investors. He is alleged to have similarly recruited investors in the presently charged fraud. It is also

alleged that Westine used identical aliases (John Scott and Michael Fairchild) in each fraud. Finally, the Government charges that the tactics Westine used to conceal money (involving a complex network of banks, accounting firms, and businesses) in the present fraud are substantially similar to the techniques used in the 1992 conviction. There is no question that the evidence the Government seeks to introduce is highly probative.

Thus, all three prongs of this sub-test for determining whether the United States' intended use is legitimate are satisfied. It is important to note, however, that the evidence of these prior bad acts may *only* be used to show Westine's identity and state of mind in proving that he did intentionally and knowingly, and not by mistake or accident, perpetrate the fraud. The evidence may not be used to show that Westine was acting in conformity with an alleged criminal character. The Court notes that these are fine lines but there is a distinction for a reason, and the approved purposes fall on the legitimate side of that dividing line. As it has been explained, the evidence may be admitted without offending the purpose of the Rule's prohibition on the use of character evidence to prove character propensity.

"[F]inally, the district court must determine whether the 'other acts' evidence is more prejudicial than probative." *Bell*, 516 F.3d at 441 (quoting *Lattner*, 385 F.3d at 955). Specifically, the Court must determine whether the probative value of the evidence is *substantially* outweighed by the danger of unfair prejudice. *Id*. at 440. Only in those instances where unfair prejudice is that much weightier than probativeness does this stage of the analysis require exclusion. A certain degree of prejudice is presumed to occur when "other acts" evidence is introduced, even when done so for a legitimate purpose. "[R]egardless of the stated purpose, the likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered; to suggest that the defendant is a bad person . . . and that if he

11

'did it before he probably did it again.'" *Bell*, 516 F.3d at 444 (quoting *Johnson*, 27 F.3d at 1193). As a result, the Court must carefully consider the prejudice inherent in each piece of contested 404(b) evidence when compared to its corresponding probativeness before ruling on its admissibility, and only in instances where there is a *substantial* risk of prejudice is it proper to exclude evidence on this ground.

The Court has considered this question and concluded that the evidence will be prejudicial but not unfairly so. Evidence of Westine's 1992 conviction is highly probative of Westine's identity, intent, knowledge and also of whether his actions were or were not mistaken or accidental. In an effort to minimize prejudice to Westine, the Court will incorporate jury instructions that advise the jury of the proper uses of the prior bad act information. *See Merriweather*, 78 F.3d at 1077 ("The magnitude of that risk might well have been reduced by a clear and concise instruction identifying for the jurors the specific purpose for which the evidence was admissible and limiting their consideration of the evidence to that purpose.") As the Sixth Circuit has explained this task:

> To apply Rule 404(b) fairly, the district court must carefully identify, in its instructions to the jury, the specific factor named in the rule that is relied upon to justify admission of the other acts evidence, explain why that factor is material, and warn the jurors against using the evidence to draw the inferences expressly forbidden in the first sentence of Rule 404(b).

*Johnson*, 27 F.3d at 1194.

# C

While not addressed in its response to Westine's motion to suppress, the Government noted in its initial Notice that it might seek to use evidence of Westine's prior convictions for impeachment should he decide to testify. [*See* R. 79.] In such circumstances where the defendant's conviction or release from confinement happened less than ten years ago, FRE 609

12

requires a finding that the "probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609 (a)(1)(A). When more than ten years have elapsed since the defendant's conviction or release from confinement, then evidence of that conviction is only admissible when "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect" and the defendant is given advanced notice so as to be able to contest its admission. Fed. R. Evid. 609 (b). For the reasons stated above, the court preliminarily finds that the probative value of the above convictions substantially outweighs the prejudicial effect.

### III

Having fully considered the issue, the Court hereby concludes that the Government may generally refer to Westine's 1992 fraud conviction, 1990 tax fraud conviction, and his 1985 injunction surrounding an oil scheme as background evidence. Furthermore, the Government will be able to admit evidence of Westine's 1992 fraud conviction for those purposes approved of herein, although the specific contours or boundaries of the Government's proof are questions best left to be decided in the context of trial. Finally, if Westine does decide to testify and it should be determined that evidence of his past convictions is needed for impeachment, then the Government will be permitted to do so. The Government shall submit recommended, appropriate limiting instructions for the jury. It is so ORDERED.

This, the 2nd day of January, 2015.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge