UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No: 14-10 |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| JOHN G. WESTINE, JR., | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

# I

John Westine was indicted on August 14, 2014 of perpetuating an oil and gas fraud scheme. [R. 1.] Westine, proceeding *pro se*, exercised his right to a jury trial which was held in January of 2015. At that trial, the Government presented substantial evidence that Westine fraudulently induced victims into investing in oil and gas investments, knowing that the oil and gas wells would not produce as had been promoted. The Government presented testimony from oil and gas experts, victims, co-conspirators, and investigators. Westine's primary defense was that he lacked the requisite knowledge and intent to commit fraud, instead pointing the finger at co-conspirators and claiming that he was actually trying to make the business work for clients. Following almost two weeks of trial, the jury convicted Westine of 26 counts of mail fraud, money laundering, and securities fraud. [R. 192.] He was acquitted of one count of mail fraud. [R. 193.]

Post-trial, as is his right, Westine has challenged every facet of the case put on against him. He has asked for additional discovery, charged the Government with obstructing justice, argued that the jury's verdict is against the weight of the evidence, challenged the makeup of the

jury pool, and challenged the Government's use of FRE 404(b) evidence just to name a few of the issues he has raised. Herein, the Court endeavors to resolve a number of the post-verdict motions addressing these objections. [R. 202, 206, 213, 260, 261, 200, 201, 285, 325, 326.] Many of his objections are raised here for the first time, while many have been considered on numerous prior occasions. For the reasons stated herein, Westine's motions charging the Government with obstructing justice will be unsealed and the Government will be offered time to respond, while the remaining motions will be **DENIED**.

II

### A – Motions for a New Trial [R. 202] and For Judgment of Acquittal [R. 206]

Westine moves for a new trial, alleging 1) that the Government erred in referring to his prior convictions during closing statements, 2) that "no minorities [were] allowed on the jury," 3) that the Government's use of a taped interview between Michael Hicks and Henry Ramer violated his right to confrontation, 4) that the Government failed to introduce sufficient evidence of Westine's knowledge and intent to support a conviction, and 5) that the "Government hid impeachment evidence" relating to past convictions of Michael Hicks. [R. 202.] Westine also moves for a judgment of acquittal for many of the same reasons. [R. 206.] The Government has responded [R. 208], making the motions ripe for resolution. In light of the motions similarities, the Court will consider both his motion for new trial and motion for judgment of acquittal contemporaneously.

After a jury has reached a verdict, a defendant is permitted to file a motion for judgment of acquittal challenging the sufficiency of the evidence pursuant to Federal Rule of Criminal Procedure 29. Fed.R.Crim.P. 29(a), (c). "A defendant making such a challenge bears a very heavy burden." *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000); *see also United States*

*v. Kimbrel*, 532 F.3d 461, 465 (6th Cir. 2008) (citing *States v. Vannerson,* 786 F.2d 221, 225 (6th Cir. 1986)).  When undertaking such review, the court "must decide whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007); *see also United States v. Kimbrel*, 532 F.3d 461, 465 (6th Cir. 2008).  Moreover, courts are precluded from weighing the evidence, considering witness credibility, or substituting its judgment for that of the jury.  *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002).  "A judgment is reversed on insufficiency-of-the-evidence grounds 'only if [the] judgment is not supported by substantial and competent evidence upon the record as a whole.' " *Gardner*, 488 F.3d at 710 (quoting *United States v. Barnett,* 398 F.3d 516, 522 (6th Cir. 2005); *United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir. 1992)).

  Rule 33 establishes that "[u]pon the defendant's motion, [a district] court may vacate any judgment and grant a new trial if the interest of justice so requires."  *U.S. v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010); *see also* Fed.R.Crim.P. 33(a).  The phrase "interest[ ] of justice" is not defined within the rule, and courts have had marginal success in trying to "generalize its meaning."  *Id.* (quoting *United States v. Kuzniar,* 881 F.2d 466, 470 (7th Cir. 1989)).  Still, several themes remain constant in the Rule 33 context.  The conventional use of a Rule 33 motion "is to seek a new trial on the ground that 'the [jury's] verdict was against the manifest weight of the evidence.' "  *Id.* (quoting *United States v. Crumb,* 187 Fed.Appx 532, 536 (6th Cir. 2006)); *see also United States v. Legette-Bey,* 147 Fed.App'x 474, 486 (6th Cir. 2005); *United States v. Graham,* 125 Fed.App'x 624, 628 (6th Cir. 2005); *United States v. Solorio,* 337 F.3d 580, 589 n. 6 (6th Cir. 2003).  Finally, "[w]ith a Rule 33(a) motion for new trial on the ground that the verdict is against the weight of the evidence, the power of a court is much broader

3

because a court may weigh the evidence and consider the credibility of the witnesses." *U.S. v. Dimora*, 879 F.Supp.2d 718, 724 (N.D. Ohio 2012).

### 1

#### a

Westine first argues that the Government erred in referring to his prior convictions during closing statements. [R. 202 at 1.] In a Memorandum Opinion and Order issued prior to trial, the Court considered whether the Government could refer to Westine's past criminal convictions. [R. 172.] In that Order, the Court concluded that the "Government may generally refer to Westine's 1992 fraud conviction, 1990 tax fraud conviction, and his 1985 injunction surrounding an oil scheme as background evidence." *Id*. Furthermore, the Court permitted the Government to admit evidence of Westine's 1992 fraud conviction to demonstrate his intent to defraud investors, his knowledge of the scheme, his identity and also to demonstrate his absence of mistake or lack of accident. *Id*. The Court stands by that Order.

Westine generally complains of the Government's reference to these convictions during closing statements, but does not cite to any specific, objectionable reference. The Court has reviewed the transcript [*see* R. 354 at 11-34, 40-43] and is satisfied that the Government acted in compliance with this Court's earlier order.

#### b

Westine next argues that no minorities were allowed on the jury in contravention of *Batson v. Kentucky*, 476 U.S. 79 (1986). This is the first time that Westine has objected to the makeup of the jury. Per *Batson*, Westine must make a prima facie case of racial discrimination before the burden shifts to the Government to provide race-neutral justifications for their allegedly improper strikes. *Id*. at 94-100. Westine has provided no facts to make such a

showing. Furthermore, Westine was required to object to the jury makeup at the time of his trial, which he did not do. *See Lewis v. Horn*, 581 F.3d 92, 101 (3d Cir. 2009) ("The first shortcoming with respect to this claim is the absence of a timely objection to the prosecutor's exercise of peremptory strikes during jury selection."); *United States v. Pofahl*, 990 F.2d 1456, 1465 (5th Cir. 1993) ("Because a timely objection is an essential prerequisite to a *Batson* claim, we agree that neither [Defendant] is entitled to assert such a claim.") (listing cases); *Thomas v. Moore*, 866 F.2d 803, 805 (5th Cir. 1989) (same).

**c**

At trial, the Government played a taped conversation between Michael Hicks and Henry Ramer, who are both co-defendants in this matter. Westine argues that the Government violated his right to confrontation when it played this recording. First, it should be noted that Westine cross-examined Michael Hicks at the trial so there is not any possible confrontation issue arising from Hick's statements on the tape. While Ramer was not called on to testify, Westine's rights to confrontation were still not offended.

As noted by the Government in its response, the recording qualified as a *statement of a co-conspirator*. Federal Rule of Evidence 801(d)(2)(E) provides that statements "made by the party's coconspirator during and in furtherance of the conspiracy" are not hearsay. Fed. R. Evid. 801(d)(2)(E). Such statements are not testimonial, and do not give rise to confrontation objections. *United States v. Stover*, 474 F.3d 904, 912-13 (6th Cir. 2007); *United States v. Martinez*, 430 F.3d 317, 328 (6th Cir. 2005) *cert. denied,* 547 U.S. 1034 (2006) (holding that co-conspirators' statements made in furtherance of conspiracy are not testimonial); *United States v. King*, 351 F.3d 859, 865 (8th Cir. 2003) (Court found statement of co-conspirator not in violation of confrontation clause, reasoning that "[i]nsofar as such hearsay considerations [ ] apply in this

5

case, the exclusionary principles embodied in the Confrontation Clause do not nullify the well-established reasons for making such admissions non-hearsay under the hearsay rule.")

**d**[1]

Westine also argues that the Government failed to introduce sufficient evidence of his knowledge and intent to support a conviction. Westine points to a few distinct pieces of testimony which he believes support this argument. For example, he refers to the testimony of Michael Hicks, where Hicks testified that Westine did not have any "intent or knowledge" to commit the crimes of which he was convicted. [R. 202 at 2.] The line of questioning to which Westine is referring culminated in what is reprinted below:

> Westine: All right. So basically, you and I were like supposedly a co-conspirator, but you just testified through this indoctrination here that you and I never had any intent to defraud the clients?
>
> Hicks: Okay.
>
> Westine: All right. Well, it's a basis for mail fraud. You can't commit mail fraud unless there's intent.

[R. 326 at 133.] The government quickly objected on the grounds that Westine was asking Hicks for legal conclusions. [*Id*.] The objection was sustained and the Court explained to Westine that "it's not an appropriate line of questioning to try to argue a legal point with a particular witness," but that he could "ask factual questions that bolster or support the argument that you're going to want to make later in closing." [*Id*. at 136.] Now, Westine attempts to resurrect this same argument. He cites to Hick's stated conclusions, and asks the Court to accept them instead of the jury's verdict.

---

[1] At docket entry 313, Westine moved ex-parte for an evidentiary hearing on his motion for a new trial and his motion for a judgment of acquittal. As he provided no reason to have a hearing on either motion, his request at docket entry 313 will be **DENIED**.

Westine further argues that the victims' testified that he never made any "promises or guarantees" to victims. [*Id*.] First, this hyper-technical argument attempts to side-step the victims' overwhelming testimony that they had been duped by John Westine (using either his own name or one of his aliases). Second, the Government did not have to prove that Westine made a "promise" or a "guaranty," but that Westine "devise[d] a scheme to defraud" and that he had the "intent to defraud." [R. 195.] As provided in the jury instructions, a " 'scheme to defraud' includes any plan or course of action by which someone intends to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises." [R. 195 at 15.] A person has the "intent to defraud," when they "act with an intent to deceive or cheat for the purpose of either causing a financial loss to another or bringing about a financial gain to oneself." [*Id*.]

Finally, Westine argues that Mark Cornell "lied to everyone," so his testimony cannot support proof of Westine's knowledge or intent. [*Id*.] For purposes of a motion for judgment of acquittal, the Court cannot "consider[] witness credibility, or substitute[e] its judgment for that of the jury. *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002). In considering a motion for new trial, the Court may consider credibility in deciding whether the verdict is against the weight of the evidence. *Dimora*, 879 F.Supp.2d at 724.

As a preliminary matter, Westine's arguments are demonstrative of his overarching post-trial tactic to re-argue the evidence that was presented to a jury. Westine made these arguments at his trial, the jury considered all the evidence, and found him guilty beyond a reasonable doubt. At trial, the Government presented evidence that Westine used multiple aliases to deceive investors, used multiple bank accounts to hide money, presented altered geological reports to investors, misrepresented anticipated oil outputs, misrepresented his experience in the oil

7

business, and failed to reveal his own criminal history to investors. There is no question that the Government demonstrated both his knowledge and intent.

### e

Finally, Westine argues that "Government hid impeachment evidence" relating to Michael Hick's convictions in the State of Ohio. [R. 202.] The Government represents that it is unaware of what information Westine is referencing. [R. 208 at 4.] As Westine has not provided any additional information about convictions that were allegedly withheld (in suspected contravention of *Giglio v. United States*, 405 U.S. 150 (1972)), the Court is not positioned to grant Westine relief at this time.

### 2

When considering whether a judgement of acquittal is appropriate, the court "must decide whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007). Similarly, when considering whether a new trial is warranted, the Court asks whether the "the verdict is against the weight of the evidence." *Dimora*, 879 F.Supp.2d at 724. Neither is the case here. Because Westine cannot meet either heavy burden, his motions for new trial and for a judgment of acquittal are **DENIED**.

### B – Motions to Dismiss the Indictment [R. 213, 260.]

Westine moves to dismiss the indictment, alleging that it was "unconstitutionally amended by the Court's jury instructions to cause a denial of due process." [R. 213.] The Government responded [R. 218.] Federal Rule of Criminal Procedure 12(b) permits motions challenging the Court's jurisdiction to be "made at any time while the case is pending." Fed.R.Crim.P. 12(b). Westine does not challenge the Court's jurisdiction, but restates the

arguments he has advanced elsewhere about his lack of knowledge and intent, the jury instructions, and the Government's use of FRE 404(b) evidence. [*Id.*] As none of his arguments attack either the sufficiency of the indictment or the court's jurisdiction, his motion [R. 213] is **DENIED**.

Westine further moves to dismiss the money laundering count pursuant to Rule 12(b). [R. 260.] First, he argues that jurisdiction for that charge "lies only in California not Kentucky per evidence at trial" as money laundering is not a "continuing offense." Westine cites to *United States v. Cabrales*, 524 U.S. 1 (1998) for support. In that case, the Supreme Court held that the Missouri was not the proper venue for Cabrale's money laundering offenses because all the activity supporting the money laundering charge had occurred in Florida. *Id.* at *2. This is not the case for Westine. The Government presented ample proof of Westine's enterprise operating in Kentucky. Most notably, the oil wells were located in the Commonwealth.

Second, Westine argues that "spending money . . . is not money laundering" and that the evidence at trial only proved that he spent money withdrawn from ATMs. [*Id.*] Westine cites to *United States v. Sanders*, 928 F.2d 940, 946 (10th Cir. 1991) for the proposition that he had to do more than "spend" money to be convicted of money laundering. In *Sanders*, the Court explained that the money laundering statute criminalizes transactions "designed to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of specified unlawful activity." *Sanders*, 928 F.2d at 946 (quoting 18 U.S.C. § 1956(a)(1)(B)(i)). Due to this requirement, the Court found that only spending money, without evidence of a "design to conceal the nature or sources of the proceeds" was insufficient to support a money laundering conviction. *Id*. This rule was adopted by the Sixth Circuit in *United States v. Marshall*, 248 F.3d 525, 539 (6th Cir. 2001). In this case, there is no question that Westine did more than

"spend" the criminal proceeds, but that he had the requisite "intent to disguise." At trial, the Government presented evidence that Westine took the money and funneled it through a number of various bank accounts, spending a portion that he took out for himself, and reinvesting much of it into the scheme. In total, there was a complicated and intricate system of money flow in which Westine shuffled the money so as to conceal its nature, using both numerous aliases, and multiple companies to achieve this end. Furthermore, Westine had co-conspirators open bank accounts to further conceal the true nature of his businesses. This is a far cry from the transaction in *Sanders*, 928 F.2d 940, where the Defendant purchased a couple cars without attempts at concealment, or in *Marshall*, 248 F.3d at 539, where the Defendant purchased a watch, bracelet, and wine with the only evidence of an intent to disguise being a lie told by the Defendant about where he had received the watch. Accordingly, Westine's motion to dismiss the money laundering charge [R. 260] is **DENIED**.

### C – Motions Accusing the Government of Misconduct and Obstruction of Justice [R. 200; R. 201.]

Westine has moved the Court *ex-parte* for an evidentiary hearing on various allegations of "obstruction of justice." In these sealed, *ex parte* filings, Westine cites to three different circumstances which he believes demonstrate the Government's obstruction of justice. First, he argues that Michael Hicks was threatened and intimidated. [R. 200 at 1.] He asks the Court to interview Michael Hicks about alleged pressure applied to him. [*Id*.] Second, he alleges the Government and one of its agents attempted to "put words into [James Garmon's] mouth." [*Id*.] Third, he alleges the Government failed to disclose evidence of a phone interview with James Garmon. [*Id*.] These same allegations were repeated at docket entry 201.

These motions were filed *ex parte*, but are more appropriately made available to the Government so that they may respond to the allegations. Accordingly, the Court will order that the entries be unsealed, and the Government will be provided time to respond.

### D – Judicial Notice [R. 285, 326]

Westine moves the Court to take judicial notice of testimony that demonstrates he did not have either the knowledge or intent to commit mail fraud. [R. 285.] Subsequently, he moved to "construe docket #285 judicial notice as resolution of disputed facts in support of Westine's (6) page filing on or about June 5th, 2015." [R. 326.]

Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. If Westine is asking the Court to take judicial notice of the fact that testimony was taken, that is not necessary as the testimony is documented in transcripts of the trial. If Westine is asking the Court to take judicial notice of the fact that the testimony does not support that he had either the requisite intent or knowledge, then his motion is **DENIED** as this is not the type of information for which the Court may take *judicial notice*. *See* FRE 201. Furthermore, as the Court is unclear what relief Westine seeks in his motion to "construe docket #285 as disputed facts in support" of his case, it will also be **DENIED**.

### E – Motion for Declaratory Judgment on Facts [R. 261]

Westine moves that the Court enter a "declaratory judgment" on a certain facts "to be applied at Westine['s] sentencing." [R. 261.] Westine then proceeds to list seven facts. As with his motion for the Court to take judicial notice, discussed *supra*, Westine's focus appears to be

on this Court taking notice that there was "no testimony that Westine had actual/factual knowledge or intent to commit mail fraud." [R. 261 at 1.] Federal Rule of Civil Procedure 57 and 28 U.S.C. 2201 are the appropriate sources of law addressing declaratory judgments. These rules apply in the civil context and have no application to post-verdict, criminal motions. Accordingly, Westine's request is **DENIED** as the rules have no application to his case. To the extent that Westine asks this Court to take judicial notice of these facts, the request is also **DENIED** for the reasons stated, *supra*.

### III

Accordingly, the Court being sufficiently advised, and for the aforementioned reasons, Westine's motions at docket entries R. 202, 206, 213, 260, 261, 285, 325, and 326 are **DENIED**. Furthermore, the Clerk of Court is hereby Ordered to **UNSEAL** Westine's *ex parte* motions [R. 200; R. 201] and the Government is given one week to **RESPOND** to Westine's allegations.

This 11th day of September, 2015.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge